OPINION
Defendant-appellant Thomas H. Albright appeals the denial by the Licking County Municipal Court of defendant-appellant's Motion to Suppress and defendant-appellant's Motion to Continue his trial date. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On February 27, 1999, appellant was arrested and charged with Operating a Motor Vehicle Under the Influence of Alcohol or Drugs (OMVI) in violation of R.C. 4511.19(A)(1), Failure to Wear a Safety Belt in violation of R.C. 4513.26.3(B)(1), and Failure to Obey a Traffic Control Device (Stop Sign) in violation of R.C.4511.12. At his arraignment on March 3, 1999, appellant entered a plea of not guilty to all of the charges. A Motion to Suppress was filed by appellant on April 7, 1999. Appellant, in his motion, sought to suppress "all statements attributed to defendant [appellant] after he was under arrest and in custody due to absence of Miranda" and also "the written statement attributed" to appellant. Thereafter, a suppression hearing was scheduled for April 28, 1999. The following evidence was adduced at the suppression hearing. On February 27, 1999, Trooper Timothy Root of the Ohio State Highway Patrol was on duty. At approximately 4:10 A.M., Trooper Root, who was in uniform driving a marked cruiser, was dispatched to the scene of an accident to investigate. The driver of the vehicle involved in the accident had called the Ohio State Highway Patrol and reported that the accident had occurred a few hours before. The driver also told the dispatcher that he was heading on foot to the Johnstown Police Department. En route to the scene of the accident, Trooper Root ran into the driver of the vehicle involved in the crash who flagged the trooper over. Trooper Root testified at the suppression hearing that the driver "was staggering a bit. His walk was uneven. I noticed his eyes were glazed and bloodshot. I detected a strong odor of an alcoholic beverage on his person from the moment I made contact with him. His speech was a little slurred and slow." Transcript of suppression hearing at 8. After the trooper asked the driver, who had identified himself as appellant Thomas Albright, for his driver's license, appellant took a seat in the cruiser. The two then proceeded to the scene of the crash. Upon arrival at the crash scene, Trooper Root had appellant sit in the rear of the cruiser and fill out a witness statement. During such time, the trooper took photographs of the crash and conducted an investigation as to the cause of the same. Trooper Root was suspicious that appellant was intoxicated because of the manner in which appellant had been walking and slurring his speech and because of a strong odor of alcohol. When asked at the suppression hearing what he had done to find out if his suspicion was correct, Trooper Root testified: "On the crash report, there was a small section on the bottom right corner front page of the OH-1 which asks about detecting, or have been drinking, alcohol content, this that, so on the witness statement I asked the Defendant how much he had been drinking. I asked him if he had anything to drink after the crash. . . ."
Transcript of suppression hearing at 9. Appellant, who Trooper Root testified was not under arrest while the crash report was being completed, was not advised of his Miranda rights at such time. Appellant answered all of the trooper's questions. After the witness statement was completed and signed by appellant, Trooper Root, who was then seated in the cruiser with appellant, noticed a "really, really strong" odor of alcohol. Transcript of suppression hearing at 11. Trooper Root stated that he previously had not noticed how strong the odor was since he was not in the cruiser while doing his investigation. For such reason, Trooper Root conducted a horizontal gaze nystagmus test on appellant. After appellant failed the test, appellant was arrested and advised of his Miranda rights. Upon arrival at the Johnstown police department, Trooper Root advised appellant of his Miranda rights for a second time. Appellant refused to voluntarily take a BAC Datamaster test, telling Trooper Root that he "knew he was going to test over the legal limit" and that "he was drunk and didn't want that used against him in court." Transcript of suppression hearing at 14. No BAC test was performed on appellant because of the two hour limit. At the conclusion of the hearing, the trial court took the matter under advisement. Pursuant to an order filed the same day as the April 28, 1999, hearing, the trial court set a jury trial for May 6, 1999. Appellee, on May 3, 1999, filed a motion to continue the trial date due to Trooper Root's unavailability. Thereafter, the trial court continued the trial until June 24, 1999, via an entry filed on May 6, 1999. Due to Trooper Root's unavailability, a second motion for a continuance of the trial date was filed by appellee on June 17, 1999. The trial court, pursuant to an entry filed the next day, granted a continuance and reset the trial to July 22, 1999. A third motion for a continuance of the trial date based on the unavailability of Officer Butler of the Johnstown Police Department was filed by appellee on July 20, 1999. Appellant's Motion to Suppress was denied by the trial court pursuant to a judgment entry filed on July 22, 1999. Thereafter, pursuant to a July 23, 1999, Judgment Entry, the trial court continued the trial until August 26, 1999. On the morning of August 26, 1999, appellant made an oral motion to continue the trial date since appellant had not received a transcript of the April 28, 1999 suppression hearing despite having filed a written request for the same on July 28, 1999. The trial court, however, denied appellant's request. Thereafter, appellant entered no contest pleas to all three charges. Appellant was fined $25.00 and ordered to pay court costs on the seatbelt and traffic control device charges. On the OMVI charge, appellant was sentenced to 60 days in jail and ordered to pay a $200.00 fine and court costs. However, 57 days of appellant's jail sentence were suspended and appellant was placed on probation for one year. In addition, appellant's driver's license was suspended for one year. A judgment entry memorializing appellant's sentence was filed on August 26, 1999. It is from the trial court's denial of his Motion to Suppress and his Motion for a Continuance of the trial date that appellant now prosecutes his appeal, raising the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION TO CONTINUE REQUESTED AUGUST 26, 1999.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION DENYING APPELLANT'S MOTION TO SUPPRESS.
 I
Appellant, in his first assignment of error, contends that the trial court abused its discretion in denying appellant's oral motion to continue the August 26, 1999 trial date. The Ohio Supreme Court, in State v. Unger, held that "[t]he grant or denial of a continuance is a matter that is entrusted to the broad discretion of the trial judge." State v. Unger (1981), 67 Ohio St.2d 65, syllabus. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. As is stated above, appellant, on the morning of August 26, 1999, the morning of the scheduled trial, orally requested a continuance of the trial date. Appellant requested a continuance since he had yet to receive a copy of the transcript of the April 28, 1998, suppression hearing despite having requested the same on July 28, 1999. The following is an excerpt from the transcript of the August 26, 1999, change of plea hearing:
 "THE COURT: Well, your request [for a continuance of the trial], the record will reflect your request was made orally this morning after the time set for trial. You hadn't requested the transcript prior to this morning. Had you brought it to the attention of anybody before this morning that you needed it or, I'm sure it could've been ready for you. But after the time of trial, or on the moment of trial is too late for a continuance, and certainly something that could've been accomplished at about any time had you brought it to someone's attention."
MR. STOKES: No, what I was saying, it was filed July 28th.
 THE COURT: I understand that. And when did you expect to get it?
MR. STOKES: Pardon me?
THE COURT: When did you expect to get the transcript?
MR. STOKES: Some time before trial.
 THE COURT: Okay. Why didn't you let us know sometime before trial that you hadn't got it?
 MR. STOKES: I probably didn't review the file much before the trial.
 THE COURT: Okay. Well, doesn't look like anybody else did either. Certainly, if you had, I could've had that available for you or I could've made sure that it had been prepared or brought it to someone else's attention. But it, that wasn't done. I can't have it ready for trial now and I don't want to continue the case further on that basis. The original case was written in February. It's been continued long enough and I'll overrule your motion on that basis."
Transcript of August 26, 1999, change of plea hearing at 4-5.
Appellant had requested a copy of the April 28, 1999, suppression hearing on July 28, 1999, less than one month before the scheduled trial date. Despite the fact that the trial was less than a month away, appellant had not inquired as to the status of the transcript until the trial date itself. When asked by the trial judge why he had failed to inform the court before trial that he had yet to receive the transcript of the suppression hearing, appellant responded that he "probably didn't review the file much before trial." Based on the foregoing, we find that the trial court did not abuse its discretion in denying appellant's oral motion for a continuance of the trial date since such decision was not arbitrary, unconscionable or unreasonable . . . While appellant argues that "[t]o deny appellant's 8/26/99 continuance, . . . is a clear abuse of discretion, especially when the trial court had previously granted appellee a continuance on three (3) different occasions, all of appellee's requests for continuances were based on the unavailability of an essential witness. Morever, all of appellee's requests were made pursuant to written motions filed, at latest, two days before the scheduled trial date. In contrast, appellant's oral motion for a continuance was made on the morning of trial and was based on appellant's failure to followup on his July 28th request for a transcript. Accordingly, appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in his second assignment of error, maintains that the trial court abused its discretion in denying appellant's Motion to Suppress appellant's written witness statement. Appellant specifically argues that Trooper Root failed to advise appellant of appellant's Miranda rights when appellant was seated in the cruiser completing his witness statement. At trial, Trooper Root testified that "[o]n the crash report, there was a small section on the bottom right front page . . . which asks about detecting, or have been drinking, alcohol content, . . . so on the witness statement I asked the Defendant how much he had been drinking. I asked him if he had anything to drink after the crash. I asked him how much he'd been drinking, things like that." Transcript of April 28, 1999, suppression hearing at 9. Appellant argues that since appellant had not been Mirandized at such time, appellant's written witness statement should have been suppressed by the trial court. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993)86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623, 627, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." In Miranda v. Arizona (1996), 384 U.S. 436, 478-479, the United States Supreme Court held:
 "* * * [W]hen an individual is taken into custody or otherwise deprived of his freedom * * * in any significant way and is subjected to questioning, * * * [h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. * * * [U]nless and until such warnings * * * are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."
A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. The United States Supreme Court, in Miranda, also specifically stated at 477 as follows: "Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." See also Berkemer v. McCarty (1984),468 U.S. 420. Contrary to appellant's assertion, there is no evidence that appellant was in custody or otherwise deprived of his freedom of action in any significant way at the time his written witness statement was taken by Trooper Root. Rather, the evidence is clear that such written statement was "general on-the-scene questioning" as to the cause of the crash in which appellant was involved. At the suppression hearing, Trooper Root testified that "[a]t the crash scene, I had the Defendant have a seat in the rear of the cruiser and had him fill out a witness statement like I would do at any other crash scene." Transcript of hearing at 8. While appellant was sitting in the cruiser completing his statement, the trooper took photographs of the crash, gathered measurements and generally investigated the cause of the crash. In addition, while appellant was seated in the cruiser, the trooper asked appellant "standard questions" that he asks at every crash scene. Transcript of hearing at 23. Trooper Root further testified that appellant, during such time, was not under arrest or being detained in any manner. Appellant was not placed under arrest until he later failed the horizontal gaze nystagmus test. Based on the foregoing, we find that the trial court did not abuse its discretion in denying appellant's motion to suppress his written witness statement. We concur with the trial court's finding that appellant's "written statements given were done when the [appellant] was not under arrest and the Court finds that not to be custodial interrogation." Since appellant was not subject to a custodial interrogation, Miranda warnings were not required during his pre-arrest encounter with Trooper Root. Appellant's second assignment of error is, therefore, overruled.
The Judgment of the Licking County Municipal Court is affirmed.
Gwin, P.J. and Wise, J. concurs